*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 23, 2016                      521842
_____

TEODORO MALDONADO et al.,
                    Appellants-
                    Respondents,
        v                                    MEMORANDUM AND ORDER

ALAIN DiBRE et al.,
                    Respondents-
                    Appellants.
_____


Calendar Date:  April 25, 2016

Before:  Lahtinen, J.P., Rose, Lynch, Clark and Aarons, JJ.


_____


        Tabner, Ryan & Keniry, LLP, Albany (Thomas R. Fallati of
counsel), for appellants-respondents.

        Deily & Glastetter, LLP, Albany (John D. Rodgers of
counsel), for respondents-appellants.


_____


Lynch, J.

        Cross appeal from an order of the Supreme Court (Nolan,
Jr., J.), entered April 27, 2015 in Saratoga County, which
granted defendants' motion to dismiss plaintiffs' second amended
complaint.

        Plaintiffs Teodoro Maldonado and Steven Maldonado (and a
third person not a party to this action) owned and operated
Nissan of Saratoga, LLC, an automobile dealership located in the
Town of Malta, Saratoga County.  In 2009, when the dealership
began to experience significant financial difficulties, the
Maldonados sought assistance from defendants Alain DiBre and
Patrick DiBre, who owned and operated several other Nissan

dealerships.  Although an agreement was not reached directly after this initial contact, in May 2010, immediately prior to the entry of an order of seizure by the dealership's secured lender, the DiBres and Maldonados negotiated a complex transaction wherein the DiBres paid them $2,000,000 for the assets and real estate of the dealership and transferred the acquisitions to two newly formed business entities, defendants Saratoga Springs Nissan LLC and 2906 Rt 9 Realty LLC (hereinafter collectively referred to as the LLCs).  As part of this transaction, the DiBres and Maldonados executed a membership agreement and an operating agreement wherein it was agreed that the DiBres would own 80% and the Maldonados would own 20% of the LLCs.  Further, the DiBres loaned the Maldonados the money necessary to purchase their interests in the LLCs, and the Maldonados both signed promissory notes as part of the transaction wherein they agreed to repay $226,200 in quarterly installments to defendant AP Management Group, Inc., an entity owned by the DiBres.  Pursuant to a hypothecation agreement, the Maldonados each granted to AP a security interest in their 10% ownership rights in the LLCs – referred to as units – and agreed that, upon any default in payments under the promissory notes, AP would receive all dividends and distributions that the Maldonados would otherwise be entitled to as members and could also sell their respective units at either a public or private arm's-length sale.

The membership agreement called for Saratoga Springs Nissan LLC to make a monthly guaranteed payment in the amount of $25,000 to a management company operated by the Maldonados.  This guaranteed payment was distinct from the cash distributions provided for in the operating agreement.  As to the latter, it was agreed that the DiBres would serve as the dealership's operating managers with the authority – "from time to time in such manner as [they] determined" – to distribute cash flow in proportion to each member's interest in the LLCs.  Following the creation of the LLCs, Teodoro Maldonado continued to work at the dealership as the general manager and Steven Maldonado ran the pre-owned division of the dealership.  It is not disputed that, in January 2011, the DiBres terminated the Maldonados and forced them off the dealership property, that no monthly guaranteed payment has been made since January 2011 and that the Maldonados stopped making the quarterly loan payments beginning with the

payment due in February 2011.

In March 2011, plaintiffs commenced this action seeking to recover their monthly management fees and share of profits, asserting causes of action for, among other things, breach of the operating and membership agreements, fraudulent inducement, breach of fiduciary duty and for an accounting. Defendants answered and interposed several counterclaims and affirmative defenses. In October 2011, defendants moved to dismiss five of the 11 causes of action in the amended complaint — namely, the first (fraudulent inducement), second (breach of contract), fourth (unjust enrichment), fifth (prima facie tort) and seventh (Labor Law) claims — based on allegations that the Maldonados were entitled to continued employment and were fraudulently induced to sell their business to the DiBres. In March 2012, Supreme Court granted the motion, holding, among other things, that the sale of the Maldonados' dealership was "the alternative to simply going out of business" and that the Maldonados' employment at the dealership was an at-will arrangement.

In October 2012, Supreme Court granted plaintiffs' application to enjoin AP's sale of the Maldonados' units in the LLCs and directed plaintiffs to post an undertaking in the amount of $50,000. Plaintiffs were unable to obtain a bond, even after Supreme Court granted an extension, and, in March 2014, the court vacated the preliminary injunction. This Court denied plaintiffs' subsequent application for a stay and, in May 2014, AP sold the Maldonados' units to the DiBres.[1] Thereafter, we denied defendants' motion to dismiss the appeal as moot and conditionally dismissed the appeal for failure to prosecute unless plaintiffs timely perfected the appeal. Plaintiffs failed to do so and we dismissed the appeal.[2] In the meantime, Supreme

---

[1] Because plaintiffs challenged the legitimacy of the sale, we do not agree with defendants' argument that plaintiffs' claims are moot.

[2] Defendants now argue that plaintiffs should be precluded from raising claims that could have been raised in the prior appeal. Although "a prior dismissal for want of prosecution acts

Court permitted plaintiffs to serve a second amended complaint, and, in April 2015, the court granted defendants' motion to dismiss the remaining causes of action set forth therein, finding that these claims were derivative and that, upon the sale of the Maldonados' ownership interests in the LLCs, they lost standing to continue the action. Plaintiffs now appeal, bringing up for review Supreme Court's prior order of dismissal (see CPLR 5501 [a] [1]; 5701 [a] [1]).[3]

A derivative suit may be commenced by a member of a limited liability company on behalf of such limited liability company when recovery is sought for damages to the entity (see Tzolis v Wolff, 10 NY3d 100, 103 [2008]). A direct or individual claim may exist, however, if the "plaintiff suffered the alleged harm individually, and he [or she] would receive the benefit of any recovery" (Scott v Pro Mgt. Servs. Group, LLC, 124 AD3d 454, 454 [2015]; see Gjuraj v Uplift El. Corp., 110 AD3d 540, 540 [2013]). When considering the sufficiency of a complaint, "[t]he pertinent inquiry is whether the thrust of the plaintiff's action is to vindicate his [or her] personal rights as an individual and not

_____

as a bar to a subsequent appeal as to all questions that were presented on the earlier appeal . . ., an appellate court has the authority to entertain a second appeal in the exercise of its discretion, even where a prior appeal on the same issue has been dismissed for failure to prosecute" (Faricelli v TSS Seedman's, 94 NY2d 772, 774 [1999] [internal quotation marks and citations omitted]). Here, we exercise our discretion to consider the arguments that plaintiffs have raised on this appeal with respect to the sale of their units.

[3]  Plaintiffs do not challenge the dismissal of the first, fifth and seventh causes of action. Further, although defendants' arguments with regard to the alternative grounds for dismissal are properly before us, because defendants were not aggrieved by the order appealed from, their cross appeal is dismissed (see Ullmannglass v Oneida, Ltd., 121 AD3d 1371, 1372 n 2 [2014]).

as a stockholder on behalf of the corporation" (Albany-Plattsburgh United Corp. v Bell, 307 AD2d 416, 419 [2003] [internal quotation marks and citation omitted], lv dismissed and denied 1 NY3d 620 [2004]; see Craven v Rigas, 85 AD3d 1524, 1527 [2011], lv dismissed 17 NY3d 932 [2011]).  If the individual claim is "confused" or "embedded" within the derivative claim, then it must be dismissed (Serino v Lipper, 123 AD3d 34, 40 [2014]; see Abrams v Donati, 66 NY2d 951, 953-954 [1985]; Yudell v Gilbert, 99 AD3d 108, 115 [2012]).

In support of the breach of fiduciary duty cause of action, plaintiffs allege that defendants withheld profit distributions and diverted profits, withheld management fees, used corporate property for personal use, mismanaged the dealership, caused a reduction in the value of plaintiffs' units, sold the dealership without sharing profits with plaintiffs and failed to disclose profits belonging to the dealership.  By their eighth and ninth causes of action, plaintiffs allege that the LLCs have not accounted for property held in trust for plaintiffs.

We agree with Supreme Court's determination that the breach of fiduciary duty cause of action, based primarily on corporate mismanagement, misuse of corporate property and diversion of corporate funds, is a derivative one (see Jobson v Progno, 100 AD3d 1407, 1407-1408 [2012]; Craven v Rigas, 85 AD3d at 1527; Albany-Plattsburgh United Corp. v Bell, 307 AD2d at 419.[4] Similarly, because any right that plaintiffs have to an accounting of monies due to and diverted from the LLCs is derived from their membership in the LLCs, we agree with Supreme Court's determination that the eighth and ninth causes of action are derivative and not direct (see Yudell v Gilbert, 99 AD3d at 114). Accordingly, because plaintiffs' units were sold, Supreme Court properly determined that they did not have standing to proceed on the derivative third, eighth, ninth, tenth and eleventh causes of action (see Herman v Herman, 122 AD3d 506, 507 [2014]; Ciullo v

_____

[4]  To the extent that plaintiffs' breach of fiduciary duty cause of action may include direct claims, they are improperly embedded within the derivative claims (see Abrams v Donati, 66 NY2d at 953; Yudell v Gilbert, 99 AD3d at 115).

Orange & Rockland Utils., 271 AD2d 369, 369 [2000], lv denied 95 NY2d 760 [2000]; Rubinstein v Catacosinos, 91 AD2d 445, 446-447 [1983], affd 60 NY2d 890 [1983]). Here, the LLCs were not dissolved but sold in accordance with the operating agreement and, if there was any remedy for the derivative claims, it would belong to the purchaser of the units, not plaintiffs (see Hanna v Lyon, 179 NY 107, 110-111 [1904]; compare Independent Inv. Protective League v Time, Inc., 50 NY2d 259, 264 [1980]). Accordingly, under the circumstances, we agree with Supreme Court that even if, as plaintiffs claim, the loss of the units was not voluntary, they still would not have standing to pursue derivative claims.

We turn next to plaintiffs' causes of action for breach of contract and the duplicative claim for a declaratory judgment.[5] These causes of action are premised upon allegations that defendants improperly terminated them from their employment with the dealership and that defendants mismanaged the dealership and diverted and withheld profits that should have been payable to plaintiffs. Supreme Court dismissed plaintiffs' breach of contract cause of action pursuant to CPLR 3211 (a) (1) and 3211 (a) (7) as part of its March 2012 order.

On a motion to dismiss pursuant to CPLR 3211, we construe the pleadings liberally, accept the allegations in the complaint to be true, give plaintiffs the benefit of any favorable inferences and "determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Mesiti v Mongiello, 84 AD3d 1547, 1548-1549 [2011]). However, "factual allegations and legal conclusions that are inherently incredible or flatly contradicted by documentary evidence" are not deemed to be true (Zito v New York City Off. of Payroll Admin., 130 AD3d 1326, 1328 [2015] [internal quotation marks and citations omitted]). Dismissal pursuant to CPLR 3211 (a) (1) may be warranted if there is documentary evidence that conclusively establishes a defense to a claim as a

---

[5] In support of the sixth cause of action for a declaratory judgment, plaintiffs allege that defendants have deprived them of their rights under the operating and membership agreements.

matter of law (see New York State Workers' Compensation Bd. v Consolidated Risk Servs., Inc., 125 AD3d 1250, 1256 [2015]; see also Leon v Martinez, 84 NY2d at 88).

Applying this standard, we find that Supreme Court properly dismissed plaintiffs' breach of contract and declaratory judgment causes of action premised on the termination of plaintiffs' employment at Saratoga Springs Nissan LLC. Where there is no defined term of employment, it is considered "to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason" (Murphy v American Home Prods. Corp., 58 NY2d 293, 300 [1983]; see Coffey v Tetragenetics, Inc., 40 AD3d 1247, 1248 [2007]). An employee who is also a minority shareholder also may be discharged at will where, as here, there is an agreement that his or her shares can be repurchased upon termination of his or her employment for any reason (see Ingle v Glamore Motor Sales, 73 NY2d 183, 188 [1989]). Here, plaintiffs identify no contractual provision that requires defendants to employ them for any defined period nor is there any provision that limits defendants' right to discharge plaintiffs (see Coffey v Tetragenetics, Inc., 40 AD3d at 1248). As it is conceded that there was no written employment agreement, plaintiffs' claim – raised for the first time in Teodoro Maldonado's affidavit responding to defendants' motion to dismiss – that there was an oral agreement entitling them to remain employed as long as the dealership remained profitable does not alter our conclusion that plaintiffs were at will employees (see Woss, LLC v 218 Eckford, LLC, 102 AD3d 860, 862 [2013]).

As for plaintiffs' claims that defendants breached the operating and membership agreements by withholding management fees and profit distributions and diverting profits, the documentary evidence supports dismissal as well. It is axiomatic that a "contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009] [internal quotation marks and citation omitted]). On a

motion to dismiss pursuant to CPLR 3211, we must construe the applicable agreements as a whole, not adopt a construction that would render any provision meaningless and "give full meaning and effect to the material provisions" (Beal Sav. Bank v Sommer, 8 NY3d 318, 324-325 [2007] [internal quotation marks and citation omitted]).

Here, the operating agreement expressly provided that the DiBres had "sole[] and exclusive[]" authority to control and manage the dealership. With respect to the cash distributions, the operating agreement provided that distributions were not obligatory but were determined by the DiBres, at their sole discretion. Similarly, although the membership agreement provided that there would be initial monthly payments in the amount of $25,000 for "services rendered," the agreement also specified that the DiBres had the sole discretion to determine whether, when and in what amount this fee was to be paid. Further, the promissory note, hypothecation agreement and cross guaranty, all referenced within the operating agreement, are clear that plaintiffs had an unequivocal, unqualified obligation to repay the loan given by the DiBres. Plaintiffs expressly agreed to pledge the units as collateral to secure the loan and, upon plaintiffs' undisputed default under the note, defendants were free to sell the units. Accordingly, even if, as plaintiffs claim, defendants' conduct precipitated their default, we find that their breach of contract claims are belied by the documentary evidence.

Finally, inasmuch as this dispute involves the application and interpretation of written agreements, Supreme Court properly dismissed plaintiffs' unjust enrichment claim (see IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142 [2009]). We have considered the parties' remaining contentions and find them to be either without merit or not necessary to resolve in light of our determination.

Lahtinen, J.P., Rose, Clark and Aarons, JJ., concur.

ORDERED that the cross appeal is dismissed, without costs.

ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court